VIOSCA, Justice ad hoc.
 

 This is an appeal from a decree fixing the inheritance taxes due to the State of Louisiana on the legacies in the succession of Miss Sarah F. Henderson. The total estate as shown by the various inventories on file amounted to $2,591,953,41. The conputation of the inheritance taxes on the various legacies other than those in favor of Sylvester W.'Labrot, Jr., is not in dispute and those taxes have been paid in full. The dispute arises over the computation of
 
 *714
 
 the inheritance taxes due on the particular legacies, aggregating $370,741.94, and the residuary legacy, the gross value of which is $610,245.07, in favor of Sylvester W. Labrot, Jr.
 

 The residuary legatee, who is also the executor of the succession herein, contends that the state inheritance tax due on his particular legacies ($370,741.94 less the exemption of $1,000) should be fixed at $25,501.94', and that from the gross value of the residuary legacy of $610,245.07, debts and charges amounting to $126,303.82 and federal estate taxes due the United States on the entire net estate of the deceased amounting to $391,245.36, should be deducted, leaving a net taxable legacy of $92,-695.89 on which he contends the state inheritance tax amounts to $6,488.71.
 

 The tax collector, on the other hand, contends that from the combined amount of the particular legacies and the residuary legacy in favor of Sylvester W. Labrot, Jr., there should be deducted in addition to the $1,000 exemption allowed by the state statute, only the debts of‘the estate amounting to $126,303.82, and that on the balance of •$853,683.19 the inheritance tax should be fixed at $59,377.82. The total tax ($31,-990.65) which the appellant claims is owed on the legacies in his favor has been paid. It has been stipulated between the parties that if the federal estate taxes due the United States are deductible, no further taxes are due to the State of Louisiana, but if the federal estate taxes are not deductible, there is still du'e the sum of $27,387.17. The District Judge decided the case in favor of the Inheritance Tax Collector and ordered payment of the additional sum of $27,387.17.
 

 The sole question presented in this appeal is whether the federal estate taxes due to the United States should be deducted before computing the Louisiana inheritance tax owed by a residuary legatee under Act 127 of the Extra Session of 1921, as amended; La.Gen. Stats. Ann. (Dart, 1939) §§ 8556-8580. This question was answered in the negative by this Court in 1921 in Succession of Gheens, 148 La. 1017, 88 So. 253, 16 A.L.R. 685, when a similar problem was raised under the 1906 inheritance tax act. The appellant now urges that this Court should overrule the Gheens decision.
 

 Before discussing the arguments advanced by the appellant for reversing the Gheens decision, it is appropriate to consider the history surrounding that case, for such a survey throws much light upon the legislative intent in respect to the deduction urged. The Gheens case was decided by a unanimous Court on February 28, 1921. On the very next day the Constitutional Convention of 1921 convened, and amongst the delegates was Justice Dawkins of this Court who was the Organ of the Court in the Gheens case. Substantial changes, which indicate that the state of the law was not only known but thoroughly considered, were made by the Convention in respect to the constitutional provisions
 
 *716
 
 pertaining1 to inheritance taxation. Articles 235 and 236 of the Constitutions of 1898 and 1913, which were the previous constitutional declarations in respect to inheritance taxation, provided:
 

 i , “Art. 235. The Legislature shall have power to levy, solely for the support of the .public schools, a tax upon all inheritances, legacies, and donations; provided, no direct inheritance, or donation, to an ascendant or descendant, below ten thousand dollars in amount or value shall be so taxed; provided further, that no such tax shall exceed three per cent for direct inheritances and donations to ascendants or descendants, and ten per cent for collateral inheritances, and donations to collaterals or strangers; provided, bequests to educational, religious, or charitable institutions shall be exempt from this tax.”
 

 “Art. 236. The tax provided for in the preceding article shall not be enforced when the property donated or inherited shall have borne its just proportion of taxes prior to the time of such donation or inheritance.”
 

 In respect to inheritance taxation the new Constitution in Article 10, Section 7, provided: “Taxes Upon inheritances, legacies and donations, or gifts made in contemplation of death, may be graduated, classified or progressive; provided, such taxes shall not exceed three per cent as to ascendants, descendants or surviving spouse; ten per cent as to collateral heirs; or fifteen per cent as to others; and exemptions to a reasonable amount may be allowed. Donations and legacies to charitable, religious or educational institutions located within the State shall be exempt from such tax.” The new Constitution gave the legislature a greater authority than it previously possessed, for it authorized a general progressive tax in lieu of a previous nonprogressive school tax and eliminated the large deduction previously allowed under former article 236. Thus it may be said that the Constitutional Convention had before it specifically the matter of deductions and exemptions; and it not only did not overturn the decision in the Gheens case by providing -for a deduction of Federal Estate Taxes, but it removed from the organic law the exemptions and deductions previously required by Art. 236 of the former Constitution, provided for exemptions of donations and legacies to 'charitable, religious and educational institutions located within the State only, and left the question of further exemptions to the legislature.
 

 In the extra session summoned by the Constitutional Convention of 1921, a new inheritance tax measure was passed which was signed by the Governor on November 19, 1921. Again no provision •was made for the deduction of federal estate taxes. Since the rendition of the Gheens decision, the legislature has met in thirteen regular biennial sessions and in many special sessions over a period of twenty-six years during which it has never
 
 *718
 
 authorized the deduction urged by the appellant. During those twenty-six years the law has been administered in accordance with the interpretation of the' law in the Gheens case, and the biennial appropriation bills have been founded upon estimated revenues calculated in accordance with that interpretation. Not only was it the apparent legislative intent at the time of the enactment of the current tax act not to permit such a deduction, but each subsequent appropriation act has carried with it at least tacit legislative approval of this Court’s holding in the Gheens case. In matters affecting the public fisc, as in the case of those affecting property rights, it is important that the established jurisprudence be not lightly overturned by the Courts.
 

 The appellant contends that an inheritance tax is a tax upon the right to receive property and cannot be based on any property other than that actually received by the legatee on distribution. Such a proposition has a certain deceptive appeal, but it is not founded upon sound taxation theory. The federal estate tax is a tax levied upon the transfer of the net estate, while the state inheritance tax is a tax upon legacies, inheritances, and donations. Neither is a property tax. Both are on the transmission of the property. The estate tax is upon the transfer of the whole of the estate transferred from the dead to the living, irrespective of its component parts or roots. The inheritance tax, likewise, is a tax upon the transmission of the estate from the dead to the living, but it is levied upon the component parts or roots. Although there are substantial practical administrative differences in these two taxes, there is no inherent substantive difference. This was well pointed out by Mr. Justice White in Knowlton v. Moore, 1900, 178 U.S. 41, 55, 56, 20 S.Ct. 747, 753, 44 L.Ed. 969, when in upholding the constitutionality of a federal inheritance tax passed during the Spanish-American War, he stated: “Thus, looking over the whole field, and considering death duties in the order in which we have reviewed them,— that is, in the Roman and ancient law, in that of modern France, Germany and other continental countries, in England and those of her colonies where such laws have been enacted, in the legislation of the United States and the several states of the Union, the following appears: Although different modes of assessing such duties prevail, and although they have different accidental names, such as probate duties, stamp duties, taxes on the transaction, or the act of passing of an estate or succession, legacy taxes, estate taxes, or privilege taxes, nevertheless tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being, and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested.”
 

 
 *720
 
 The taxpayer’s argument loses sight of the fact that transmission and receipt are correlative and complementary processes. The appellant’s argument in effect denies that there ever was a transfer of the amount owed to the federal government for estate taxes. Thus the taxpayer’s theory converts the federal estate tax from a tax measure to a federal escheat law. And likewise, it converts the state inheritance tax into a property tax on the property actually received by the legatee on distribution,
 

 Because the executor is made personally liable for the payment of the federal estate tax, under certain conditions, appellant contends that that tax is deductible as a debt of the executor under Section 4 of the Louisiana Inheritance Tax Act. Section 4 provides: “The executor of the will of a person deceased, or the administrator of his succession, shall, except as hereafter provided in section 17, after payment of his debts, proceed against the tax collector and all the heirs and legatees of the deceased summarily, by rule before the court which has jurisdiction of the succession, to fix the amount of tax due by each heir or legatee, and on trial thereof the court shall render judgment for the same against each heir or legatee, with interest and costs, as hereinafter provided.”
 

 It must be noted at the outset that the provisions of Section 4 of the present act are in effect identical with the corresponding provisions of the Act of 1906 interpreted in the Gheens case.
 

 Section 4 does not provide for the deduction of the executor’s debts. It simply establishes the time when the executor shall proceed to have the taxes determined. At most it would authorize only the deduction of the decedent’s debts. The debts of the decedent are deductible under the Louisiana act because it is only the net estate which is transferrable at the decedent’s death and the tax is levied on the actual value of the- inheritance, legacy, or donation at the time of death. Act 127 of 1921, Ex. Sess., Sec. 2. If the appellant’s argument in respect to Section 4 were sound, it would mean that no debts of any nature would be deductible in successions in which there is no administration; for Section 7 of the Act which outlines the procedure to fix the inheritance tax where the estate is not under administration makes no reference to payment of the decedent’s debts. That the debts of the decedent are deductible, whether or not there is an administration was clearly established in Succession of May, 1908, 120 La. 692, 45 So. 551. Thus on the net estate transferred at the moment of the decedent’s death, whether by will or intestate succession, both the federal government and the state government have imposed their respective death duties. The state and Federal power to tax that transfer is concurrent and equal and the determination of which sovereignty possesses the prior lien need not
 
 *722
 
 be determined until and if the case arises in which the total estate falls short of the combined taxes. Frick v. Commonwealth of Pennsylvania, 1925, 268 U.S. 473, 45 S. Ct. 603, 69 L.Ed. 1058, 42 A.L.R. 316. Both taxes being levied upon the transfer, one on the whole, the other on the component parts or roots, are taxes upon the transmission of the net estate at the moment of the decedent’s death, and unless otherwise provided by the legislature, no deduction for the federal tax before computation of the state tax can be authorized.
 

 The appellant further contends that the Gheens case should be overruled because certain statements made by the Court in that decision with respect to the federal estate tax are no longer true. It may be conceded that much of what was said by way of reasoning in the Gheens decision is no longer true, but change or alteration of the federal law gives no ground for judicial alteration of the state law, unless the state law is in some manner irrevocably keyed directly to the federal law. The Gheens case was founded upon the 'sound taxation theory enunciated by Mr. Justice White in Knowlton v. Moore, supra, and that theory is just as valid today as it was in 1921. The Gheens case is further substantiated by other well considered cases in other jurisdictions which achieve the same result. Hazard v. Bliss, 1921, 43 R.I. 431, 113 A. 469, 23 A.L.R. 826; In re Fish’s Estate, 1922, 219 Mich. 369, 189 N.W. 177.
 

 The appellant further argues that the Gheens case should be overruled because under that decision he is required to pay a tax upon a tax. But that objection is answered by the Supreme Court of the United States in Frick v. Commonwealth of Pennsylvania, supra, [268 U.S. 473, 45 S. Ct. 608] where, after a review of the jurisprudence, the Court said: “The objection that when no deduction is made on account of the federal tax the state tax becomes to that extent a tax on the federal tax and not a tax on the transfer is answered by what already has been said. But by way of repetition it may be observed that what the state is taxing is the transfer of particular property, not such property depleted by the federal tax. The two taxes were concurrently imposed and stand on the same plane, save as the United States possibly might have a preferred right of enforcement if the estate were insufficient to pay both.”
 

 The residuary legatee complains of the hardship imposed upon him because he is compelled in this case to bear the impact of both the federal and state taxes. If there is any harshness, it is due not to the state tax, but to the federal tax which Congress found it necessary to increase substantially in order to raise sufficient revenue to prosecute the recent war effort to a successful conclusion. The federal law, which levies the tax upon the net estate, makes no effort to apportion that tax except in the instances of life insurance passing directly to beneficiaries and cer
 
 *724
 
 tain property subject to powers of appointment. 26 U.S.C.A., Int.Rev.Code, § 826. Thus normally the full brunt of federal taxation is borne by the residuary legatee. However, under specific provisions of the federal law, the testator has full power to direct an apportioning of the federal tax amongst the various legatees in any manner he desires. Some states have enacted legislation providing for an apportionment of the federal tax between the various legatees unless the testator by will provides otherwise, Fed. Estate and Gift Tax .Reports (CCH) Par. 3729.18, and such legislation has been sustained as not in conflict with the federal law. Riggs v. Del Drago, 1942, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106, 142 A.L.R. 1131. Where neither the legislature nor the testator has provided for such an apportionment, this Court is powerless to give any relief to a residuary legatee.
 

 For the reasons assigned, the judgment is affirmed.