11 GASKINS, J.
This appeal concerns the consolidated successions of three siblings. In each succession, the trial court refused to place the living heirs into possession because they were not heirs at the time of the death of the decedent. Instead, the trial court instructed the heirs to submit amended judgments of possession recognizing the now-deceased heirs who were alive at the date of death of each decedent. For the reasons set forth below, we reverse and remand.
FACTS
On December 30, 2003, joint petitions for possession were filed in Winn Parish by three nephews and a niece to open the successions of Venoil Adams Parker, John Polete Adams, and Clio Adams. Venoil was a widow at the time of her death and had no children. Neither John nor Clio ever married or had any children. Venoil died in February 1992, John in November 1995, and Clio in May 2003. Another brother, Thomas A. Adams, died in March 1998, leaving three surviving children, Donnie Carroll Adams, Michael Keith Adams, and Marsha Gayle Adams. A sister, Etoil Adams Hammons, died in August 2003, leaving a surviving adopted child, John Hammons.
The petitions in the successions sought judgments of possession recognizing John Hammons, as Etoil’s sole heir, to be entitled to one-half of each estate, with his three cousins, as Thomas’ sole heirs, each being entitled to one-sixth of each of the three estates. (All of the heirs are in agreement with this disposition.) The petitions further asserted that all inheritance *749 taxes and succession debts had been paid and that there was no |2need for administration of the successions. The detailed descriptive lists in the successions are noteworthy in that the three decedents were co-owners in a tract of land in Winn Parish.
In written opinions rendered in January 2004, the trial court refused to sign the proposed judgments of possession which would have placed the living heirs in possession because these persons were not heirs at the time of the decedents’ deaths. Instead, the court maintained that it would be appropriate to render judgments recognizing the heirs who were living at the time of each decedent’s death. In support, the court cited La. C.C.P. art. 3061, which provides in pertinent part:
The court shall render and sign immediately a judgment of possession if it finds from an examination of the petition for possession, and from the record of the proceeding, that the petitioners are entitled to the relief prayed for, and that all inheritance taxes due have been paid or deposited into the registry of the court, or that no such taxes are due and that an inheritance tax return, with the - required accompanying documents, have been filed with the collector of revenue. The judgment shall recognize the petitioners as the heirs, legatees, surviving spouse in community, or usufructuary, as the case may be, of the deceased, send the heirs or legatees into possession of the property owned by the deceased at the time of his death, and recognize the surviving spouse in community as entitled to the possession of an undivided one-half of the community property, and of the other undivided one-half to the extent that he has the usufruct thereof. [Emphasis added.]
The court stated that there was “no sound legal basis to deviate from the mandate” of this article. It instructed that amending and supplemental petitions for possession be submitted to recognize the heirs as of the date of death of each decedent.
The ■ living heirs filed applications for supervisory writs in each case. Finding that the proper review procedure was appeal, this court converted 13the writ applications to motions for appeal in February 2004. A motion to consolidate the appeals was granted in May 2004.
LAW AND DISCUSSION
The living heirs argue on appeal that they are entitled to be placed into possession of the estates without first putting the deceased heirs into possession. They maintain that it is unnecessary to open multiple successions to place into possession the deceased heirs who could have accepted the successions at the time of the decedents’ deaths but failed to do so. They assert that all inheritance taxes have been paid after full disclosure of their situation to the Louisiana Collector of'Revenue.
In Succession of Martin, 234 La. 566, 100 So.2d 509 (1958), the Louisiana Supreme Court was presented with a situation similar to the current one. A testator, Smith, named several residuary legatees; during the administration of the succession, one of the legatees, Martin, died without having accepted the legacy. Martin’s heirs inherited his interest1 in the Smith estate. The Louisiana tax collector sought to collect inheritance tax from Martin’s heirs in both the Smith and the Martin successions. The trial court refused to impose the inheritance tax twice, concluding that payment was required only in the Smith succession.
According to the Martin court, the legatee succeeded to the testator from the instant of his death and was seized of right under then La. C.C. art. 944 (now La. C.C. *750 art. 937[1]). However, since he never was sent into |4possession or even accepted it, he was not seized in fact. Upon the legatee’s death, his heirs were seized of right of the legacy from the testator. The Martin court held that the inheritance tax would become due when their right of seizin merged with their seizin in fact of the property bequeathed to the legatee by the testator.
As stated in Succession of Martin, supra, heirs have no right to take or possess any part of an estate which is still in custodia legis until the inheritance tax has been paid. The inheritance tax is not enforceable until the right of seizin in law is merged into seizin in fact of a particular property. Also, the tax is upon the right to take and receive the legacies, or is a tax upon the transmission of property from the dead to the living. It is levied upon the theory that the heir or legatee should have in point of fact received a benefit from the inheritance which falls to him, out of which benefit to him a portion is made to go to the state pursuant to the tax law.
In Hildebrand v. City of New Orleans, 549 So.2d 1218 (La.1989), cert. denied, 494 U.S. 1028, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990), the court noted that the state’s scheme of inheritance taxation was tied directly to the civilian concept of seizin. Citing former La. C.C. art. 944, it stated that the heir of the decedent succeeds of right to the succession of the decedent from the moment of death, so that the right of the heir may be transmitted to his own heirs, whether or not the decedent’s heir accepted the succession or even had knowledge of its benefits. Under Succession of Martin, supra, the court concluded that the state inheritance tax was not | ¡^enforceable until the decedent’s heir’s right of seizin in law was merged into seizin in fact of a particular property.
See also Peterson v. Herndon, 221 So.2d 615 (La.App. 2d Cir.1969); Rowe v. Inheritance Tax Collector, State of Louisiana, 1997-0598 (La.App. 1st Cir.4/8/98), 711 So.2d 792, unit denied, 98-1189 (La.6/19/98), 720 So.2d 1214.
In the instant case, the now-deceased heirs had seizin in law but never seizin in fact. They never received a benefit from the inheritance which fell to them. Consequently, payment of inheritance tax on their behalf is not required under Succession of Martin, supra. Pursuant to the Louisiana Civil Code, their rights were transmitted upon their deaths to their own successors. La. C.C. art. 937. The living heirs now accept those rights to succeed. To the extent that a successor accepts rights to succeed, he is considered as having succeeded to them at the moment of death of the decedent. La. C.C. art. 954.
The successors or petitioners in the case sub judice have complied with the provisions of La. C.C.P. art. 3061. From the record in each succession, it is apparent that the petitioners are entitled to the relief prayed for and that the inheritance taxes have been paid. We find that the appellants, as the apparent living heirs or successors who filed the instant petitions for possession, are appropriate parties entitled to recognition under La. C.C.P. art. 3061.
However, we note that the petitions and affidavits of death, domicile and heirship fail to allege whether the decedents died testate or intestate. |f,Nor do they specifically state the appellants’ standing as heirs, e.g., John Hammons as his mother’s *751 successor, by virtue of her testament or as her intestate heir. If it deems it appropriate, the trial court may direct that the appellants supply this information through amended affidavits of death, domicile and heirship.
CONCLUSION
The judgments of the trial court in the three successions are reversed. Each of the three cases is remanded to the trial court, which is hereby directed to enter judgment in accordance with this opinion.
REVERSED AND REMANDED.

. La. C.C. art. 937 provides:
The rights of a successor are transmitted to his own successors at his death, whether or not he accepted the rights, and whether or not he knew that the rights accrued to him.