**87 So.2d 303**

**Succession of Mrs. Fannie MAYER, Widow of Samuel Wolf.**

**Nos. 42297, 42305.**

March 26, 1956.

Rehearing Denied May 7, 1956.

Roos & Roos, New Orleans, for defendant-appellant.

Driscoll & Flannagan, New Orleans, for appellees.

MOISE, Justice.

Mrs. Fannie Mayer, widow of Samuel Wolf, died on November 15, 1954, leaving a last will and testament drafted under Act 66 of 1952, LSA–R.S. 9:2442–9:2444, which reads in part:

"* * * I name Irwin W. Rosenthal the executor of my estate, with seizin and without bond.

\*　　\*　　\*　　\*　　\*　　\*

"I do give and bequeath unto Irwin W. Rosenthal all my interest and ownership in and to the following real estate:

\*　　\*　　\*　　\*　　\*　　\*

"I bequeath unto the following the following sums:

To Congregation Temple Sinai, One thousand Dollars.

To. Rabbi Julian Feibleman one thousand Dollars.

To. Dr. Sam Hobson, my doctor, One thousand Dollars.

To Mrs. E. Lagarde Five Hundred Dollars.

To Dora Mason, my cook, and friend Five Thousand dollars, my living room set, Victrola and records, one-half of my sheets towels and linens.

To Ethel Lee, my maid, and friend, Five Thousand Dollars, the contents of the front bed room of my residence comprising furniture furnishings, ornaments, and the other one-half of my sheets, linens, and towels.

To Sophie Welsch my grand-niece, Three thousand Dollars.

"The above special bequests of money are to be free of taxes as I instruct my executor to pay them out of my estate.

"I give and bequeath unto Jonas Simon, my nephew, Twenty-five thousand Dollars.

"I bequeath the following sums to the following, To Beulah Jones, My washer woman, five hundred Dollars; to Dr. Maurice S. Rosenthal, my nephew, five thousand Dollars; To Evergreen Sunshine Society (Home for Incurables, I bequeath Two hundred fifty dollars. To Miriam Chapter, Order of Eastern Star Two hundred fifty dollars; to Shrine Hospital, Shreveport, La., Two hundred fifty dollars; to Henry Jacobs, Organist at Temple Sinai Two hundred fifty dollars; and I bequeath to Lou Welsch, Jr., grand-nephew, Three thousand Dollars. To Dr. Sam Hobson, my doctor, four thousand dollars in addition to the one thousand mentioned above, so as to make my total bequest to Dr. Sam Hobson Five thousand Dollars.

"I bequeath the entire balance of my estate unto Irwin W. Rosenthal.

\*    \*    \*    \*    \*    \*

Codicil

"* * * I make this codicil to my last will. I instruct that the bequest to Dr. Sam Hobson of five thousand Dollars is to go to him free of taxes and expenses. In all other respects my last will of August 26th, 1954 is to stand as written. He is to receive $5,000.00 altogether. * * *"

The testamentary executor rule the legatee, Jonas Simon, to show cause why his lagacy of $25,000 should not be diminished by $1,333.30 for his prorata of the succession debts, $4,320.14 for his prorata of Federal Estate Taxes, and $1,300 Louisiana State Inheritance Taxes. The trial court made the rule absolute for the Louisiana State Inheritance Taxes and dismissed it as to the proportionate debts of the succession and as to the Federal Estate Taxes.

Jonas E. Simon then ruled the executor to show cause why his legacy should not be delivered to him, less only the amount due for the Louisiana State Inheritance Taxes. This rule, was, likewise, made absolute.

Legatee, Lou Welsch, Jr., ruled the executor to show cause why he should not be paid the amounts withheld from his legacy for payment of his prorata of the succession debts and Federal Estate Taxes. The rule was made absolute and the executor

was ordered to pay Lou Welsch, Jr., an additional $560.

The executor appealed to this Court from the two judgments rendered in favor of Jonas Simon, and the appeals were consolidated.

On appeal the executor concedes that the costs and expenses of the succession should not be prorated, and the legatees, Simon and Welsch, admit that they should pay the Louisiana State Inheritance Taxes. Therefore, the sole issue for determination is whether these legatees should bear a prorata of the Federal Estate Tax or whether the tax should be paid by the succession.

The executor contends that since the testator did not specifically exempt Jonas Simon and Lou Welsch, Jr. from payment of taxes, it was her intention that they pay Federal Estate Taxes. He further argues that by their admission that they should pay the Louisiana State Inheritance Taxes, these legatees admit that they should pay the Federal Estate Taxes. This syllogism does not syllogize, for the reason that State Inheritance Tax is directly levied on the specific amount received by the legatees.

The polar star of interpretation of wills is that the intent of the testator must be ascertained. Article 1712 of the LSA–Revised Civil Code.

The regulations as to Federal Estate Tax concerns the sole issue in this case, and we shall now discuss the pertinent provisions of the law relating thereto.

In 26 U.S.C.A. § 2002, we find:

"The tax imposed by this chapter shall be paid by the executor."

"A tax computed in accordance with the following table is hereby imposed on the transfer of the taxable estate, determined as provided in section 2051, of every decedent, citizen or resident of the United States dying after the date of enactment of this title: * * *" 26 U.S.C.A. § 2001;

and,

"For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the exemption and deductions provided for in this part." 26 U.S.C.A. § 2051.

In the case of Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 110, 87 L.Ed. 106, which construed an earlier Revenue Act, our Supreme Court held:

"We are of opinion that Congress intended that the federal estate tax should be paid out of the estate as a whole and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax * * *. In the Act of 1916 Congress turned from the previous century's inheritance tax upon the receipt of property by survivors (see Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969; Scholey v. Rew, 23 Wall. 331, 23 L.Ed. 99) to an

estate tax upon the transmission of a statutory 'net estate' by a decedent. That act directed payment by the executor in the first instance, * * *."

In the case of Rogan v. Taylor, 136 F.2d 598, 600, the United States Circuit Court of Appeals, Ninth Circuit, held:

" * * * The general rule, when the law of the state does not provide otherwise, is that this burden rests, like other administration expenses, on the general estate and is not apportioned among the legatees. Y. M. C. A. v. Davis, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558. * * * This rule is recognized in California. * * *"

In 26 U.S.C.A. § 2205, we find:

"If the tax or any part thereof is paid by, or collected out of, that part of the estate passing to or in the possession of any person other than the executor in his capacity as such, such person shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate or whose interest is subject to equal or prior liability for the payment of taxes, debts, or other charges against the estate, it being the purpose and intent of this chapter that so far as is practicable and unless otherwise directed by the will of the dece-

dent the tax *shall be paid out of the estate before its distribution."* (Italics ours.)

From the decisions in the cases of Riggs, supra, and Rogan, supra, we believe that it was the intention of Congress that the matter of apportionment of the Federal Estate Tax be determined by the individual States, but that under no circumstance should payment be defeated. In order that this purpose be achieved, it appears that the general rule is to have the succession pay the tax before payment of particular legacies. The fact that Louisiana has not deviated from the general rule is borne out by the following pronouncement in the Succession of Henderson, 211 La. 707, 30 So.2d 809, 814:

"Thus normally the full brunt of federal taxation is borne by the residuary legatee. However, under specific provisions of the federal law, the testator has full power to direct an apportioning of the federal tax amongst the various legatees in any manner he desires. Some states have enacted legislation providing for an apportionment of the federal tax between the various legatees unless the testator by will provides otherwise, Fed.Estate and Gift Tax Reports (CCH) Par. 3729.18 and such legislation has been sustained as not in conflict with the federal law. Riggs v. Del Drago, 1942, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106, 142 A.L.R. 1131. Where neither the legislature

nor the testator has provided for such an apportionment, this Court is powerless to give any relief to a residuary legatee." See, Revised Civil Code, Articles 1642, 1611, 1424.

The issue before us is the payment of the Federal Estate Tax. The inventory in this case totals $581,940.67, and the funds are adequate to pay the Federal Estate Tax of $94,120. 78.

Therefore, for the reasons assigned, the judgment of the trial court in each of these consolidated cases is affirmed; all costs to be paid by the succession.

Judgments affirmed.

HAMITER, J., concurs in the decree.